Good morning, your honors. May it please the court. My name is Gail Stage and I represent Mr. Virgil George in this case. The court has asked the parties to focus on the United States v. Doyle opinion, which was issued by this court in May of this year. It relates to the right of allocution. We would stand on the arguments made in our brief for the other issues that we raised on behalf of Mr. George. In this case, the district court imposed a sentence upon Mr. George and in fact recessed the sentencing hearing and after the fact reopened the case and asked Mr. George if he had anything to say. Mr. George said not at this moment. He declined to speak and the sentence was over. That was a violation of Rule 32 of the Criminal Rules of Civil Procedure. In that rule, the court, the rule states that before imposing a sentence, a court must permit a defendant to speak or present any information which might mitigate a sentence. Now the difference between this case and the Doyle opinion is that in the Doyle opinion, there was no opportunity post imposition of sentencing for the defendant to speak. In this case, not only was Mr. George not given an opportunity to allocute prior to the imposition of sentencing, but the sentencing was so cantankerous that there were things that he probably could have said and would have wanted to say in order to dispel some of the ideas that the district court judge had as an example. At some point, the district court says that this is page 25 of docket entry 118 which is the sentencing record. The judge tells the attorney that he was minimizing the defendant's conduct. The defendant could have said, Judge, I take full responsibility for everything that I did. Another time, on page 26 of the record, the court says the biggest mistake the defendant made was taking the stand. I watched him testify. The judge can infer the opposite of what the defendant's testimony was. Well, defense counsel had to point out the defendant never testified in this case. So the judge was mistaken in regards to those facts. At another point, the district court judge said, This man's a con man. That's at page 27. And thinks he can talk his way out of anything. He's a consummate BS artist and not a good one. He later said he should go in the crooks gallery of inept crooks. And again, Mr. George was never given a meaningful opportunity to dispel those notions. Right The government was given five transcript pages to argue why Mr. George should be sentenced at the top of the guidelines and why he should get the harshest sentence possible in relation to his two counts of conviction for aggravated. Let's assume that we agree with you that there needs to be a remand for allocution. And let's assume that we affirm on the other guideline objections they didn't object. You agree you don't get to re-argue those objections again if we rule on those? Absolutely. It's just the right to allocate. It's just the right to allocate is what you're asking? Yes, Your Honor. Vacate the sentence and go back to allocate. You're not asking to raise new objections or do anything? Absolutely not. That's not permitted by the law. You just want to have the rules followed as to allocution? Yes, Your Honor. What do you say about the government's reliance on the case of Gordon v. United States, which is a Fifth Circuit 1971 opinion? Well, Gordon is pre-Guidelines altogether. It's certainly pre-Booker. And I would argue that Gordon is no longer good law, especially in the Doyle opinion. The Eleventh Circuit panel recognized that post-Booker the law in the Eleventh Circuit had essentially not changed in regards to element three of the plain error rule, that there was a presumption that there was a harm to the defendant. So what the Doyle opinion essentially did is it abrogated. And I don't know how much you rely upon Westlaw, but if you go to Westlaw and you look at some of the pre-Doyle opinions out of the Eleventh Circuit, you'll see that Doyle is considered to have abrogated them. And in this case, Doyle said, we are establishing essentially a new standard. Now, it said generally there will be a presumption. And the question is, in this case, was there a presumption when the defendant arguably was allowed to say something? And I would argue that no, it wasn't meaningful. The substance of the rule must be followed, not merely the form. And even if it's futile, even if there's really nothing the defendant could have possibly said, still the rule must be complied with, it must be given this opportunity, and our relief that we're asking for is simply a remand. And you almost get the feel, or I do, that the district court just forgot to ask and then tried to correct it immediately after he imposed the sentence. Because he did ask your client, would you like to say and address the court? Well, you're right about that. But there are two cases from other circuits, one from the Seventh and one from the Tenth, which I will file with the court after today's oral argument. And in both of those cases, the circuits, their published opinions, the circuit courts said, you know, how is a defendant to really understand the nuances of being able to argue for a different sentence once they've sat there and heard the sentence imposed upon them? You know, defendants aren't familiar with the process. The whole point of Rule 32 is for the district court judge to directly address the defendant and say, you have an opportunity to change my mind. You have an opportunity to impact your sentence. That didn't happen in this case. In other cases in which the courts have found no presumption, there's been the district court rescinded the sentence and said, OK, convince me that I was wrong. Or the defendant had an opportunity to interact during the hearing, but, you know, the courts found that the defendant said enough to try that it was a form of allocution. We just simply don't have that. The defendant did not say a word during sentencing. If there are no more questions, thank you. Thank you. For the government, Mr. Colon. Seems like to me Doyle controls this case now. Your Honor, I have to respectfully disagree. Doyle controls cases about remedy. Whether there needs to be a showing of prejudice produced by the defendant before there can be a remand in cases where there has been a violation of Rule 32, a complete violation. And it says a presumption of prejudice. Yes. Those presumpt—prejudice is presumed in cases where there has been a complete violation. Gordon, however, which is a controlling case in this— Gordon's a pre-Booker case. But Your Honor, I think what Booker changed goes to the prejudice aspect of Doyle. Booker is what underlies the Doyle analysis about whether you need to show prejudice. The discretion of the trial court to give a lower sentence is what Booker changed. And that's why Doyle holds that in cases where the trial judge has discretion, had discretion to give a lower sentence, that you don't need to have any further showing of prejudice when there— What you're saying is, okay, there's a presumption of prejudice. But after you've sentenced somebody, if you happen to say, okay, is there anything you want to say? And he says, no, that cures the presumption of prejudice. That's what you're asking us to hold. Actually, Your Honor, I would put it slightly differently in that you ask whether there's been prejudice after you establish that there has been a complete violation. And what Gordon says at page 882— Why is there not a complete violation here when he didn't ask? Because what Gordon holds at page 882 is that if the trial judge asks after sentence is that, in the words of Gordon, that is an effective cure of the violation. The entire purpose of the procedure we have of a trial judge on the spot— Yeah, but you have to realize in the Gordon context, there are mandatory guidelines. There wasn't a lot of discretion to go down, okay? So it's saying asking after the fact cures it. Again, Your Honor— It just seems different to me. And it's in 1971. What I don't understand is why the you need to give them—I mean, this is so basic. Yes, Your Honor. For us to be up here having to do this. Were you the trial, the sentencing person? No, Your Honor. Can you tell your office if they're not doing allocutions, say, hey, judge, don't sentence yet. Can you give the defendant a chance to allocute, please? You're absolutely right, Your Honor. Oh, to go to 11th Circuit with this. It's what the rule requires. It's what should happen. It's pretty basic. Yes, Your Honor. How do you get around—you know, in between Gordon and Booker was this case of United States v. Prouty, 2002, the 11th Circuit. Isn't that the case that really established this presumption of prejudice? Forgive me, Your Honor, perhaps I'm confused. My understanding is that Prouty is one of the cases that Doyle corrects. Well, it extends, right, post-Booker. So I think what the sea change was from Booker that led to Doyle is to show the effect of the error. But I still believe, Your Honor, that Gordon establishes whether a trial judge can correct the error. The reason we have the procedure after a judge imposes sentence to say, is there any objection as to the manner in which sentence was pronounced, is specifically so that trial judges can correct errors like this one on the spot. As Gordon states, again, at page 882—I'm sorry, 883, all the defendant would be getting is exactly what he was offered there on the spot. And I have to disagree. But isn't there a big difference, Mr. Colan, in the sense that if the judge has already gone through all of his rationale for imposing a certain sentence, and then simply after the fact says, do you have something to say, wouldn't any reasonable person think that the die has been cast? The judge didn't say, listen, I made a mistake. I'm taking everything back. Let's start from where the lawyers ended. I'm taking back the sentence. Please speak if you wish to, and then go ahead and do whatever. But if you've imposed a sentence and you're not telling the defendant in that scenario, that you're giving him the chance to change his mind, how can a defendant know or think that he's got a shot to change anything? I think there are going to be hard cases and less hard cases. And I think Gordon actually shows a harder case than this one as to the futility aspect. Because there, it's very clear the defendant viewed the late opportunities futile. His response when declining the opportunity was, what's the point? Whereas here, I don't think it was cantankerous at all. You look at the last page of the sentencing transcript. The defendant's answer is, not at this moment. I'm OK, Your Honor. Thank you for everything. Defense counsel then adds, thanks for the fair shake. That's all we can ask for. That's less of a fact of a defendant feeling the futility that was present in Gordon, where the former Fifth Circuit held that, nevertheless, it was an effective cure and there was no need for remand. The cases from the other circuit that counsel has brought up today are also cases where the court specifically points to evidence in the record that show the futility. At page 1268, the Landeros-Lopez case says that it was clear that it had already been decided that it was futile. In Lepke, the court refers to the fact that the defendant clearly felt that anything he would say at that point would be disrespectful. That's not this case. There is not a cantankerous opportunity to speak here that was offered. It was politely declined. The defendant thanked the court for everything. What, if the judge politely disobeys the rule, it's OK? As opposed to cantankerously violating the rule? The point, Your Honor, is that judges can cure mistakes. That's why we have contemporaneous objections. There could be a case. There is certainly a scenario where the judge would say, you know what? I've made up my mind, but you go ahead and speak if you want to. And that would be a different case. But that's not this case. Judges make mistakes. I mean, that's why we have appellate courts. But we also have a procedure for the trial judge there on the spot to say, do you have any objection to the manner in which sentence was pronounced? And the whole purpose of that procedure would be defeated. Tell me this. Other than Gordon, do you have any other case you can cite us where the judge, in fact, ignored the rule to allow allocution prior to imposing sentence where it was held OK and affirmed on appeal? In a more recent unpublished decision from this court, but it's a decision recently reaffirming and applying Gordon by name for the exact same rationale that where the judge offers the opportunity to speak at the hearing, corrects it, recognizes the mistake, and corrects it there on the spot, that there would be no need for remand for resentencing. And Gordon gives a good explanation for why. Gordon says at page 883 that returning for resentencing here, we've all acknowledged he doesn't get to re-argue anything. He just gets put back in that same position to the same judge who has already announced a sentence. I mean, he's exactly in the same position before a judge who has announced sentence. I mean, look what you're saying. He's already announced sentence. That means that the post-sentencing allocution offer probably wouldn't have made any difference. And yet that's exactly what Doyle, Doyle is consistent with Gordon on this point. Doyle says the remedy is to go back before the judge who has already announced sentence and now have your chance to speak. And what Gordon says is that the defendant would have no greater opportunity to speak than he's already been given since our established procedure would just require remand for resentencing. That's Doyle too. Help me with this. In Gordon, the question that the district court made after the error and after the pronouncement of sentence was, do you wish to make a statement? And do you wish to present any information in mitigation of punishment? So there was more that was asked in Gordon than that was asked here. All he said here, do you want to make a statement? Is that correct? I'm going to read it a little further because I think there is some more to it that weighs on this question. What the court said here was, I want to make sure I gave the defendant, I did ask, this was before sentence, I did ask the defense had any, if the defense had anything further, and I want to make sure you understood that included the defendant. He said it badly. He said it incorrectly. But when he's explaining to the defendant why he's doing it, what he's saying is, I want you to understand when I asked before, I meant you too. And so he says, I want to make sure you understood that that included the defendant if he had anything he wanted to say to me. And that's when the defendant says, no, no, thank you, your honor. So I think what the court said here was not the kind of language that would indicate to a defendant that it was futile. What he was saying was, when I asked before sentence if there was anything further, I meant to include you. Now granted, he didn't. He said it wrong. He violated the requirement of the rule. But what Gordon says is that it is an effective procedure to say, you know what, I've caught it. I'm going to offer you that opportunity now because really, what is he being offered by Doyle other than the chance to go back before that same judge?    . . .    . . .  . . .     . . . . . .               I mean, it's just a different sentencing regime. Everything was different. I understand that, your honor, but I still respectfully think that goes to the prejudice prong and not as to whether the late opportunity gives the defendant his ample chance to speak to the judge. And in the matute, this court has recognized that Gordon's rationale continues to make sense. The defendant had his opportunity to speak as to what he says and to what factors the judge is considering after hearing that. That's what Booker and the rationale for Doyle led to. I understand you have no published precedential opinion though post-Gordon that supports your position. I do not believe so, your honor. But Gordon remains good law in this circuit. It has not been overturned. Nothing in Doyle is inconsistent with it. Doyle doesn't address jurors at all. I think it's hard to write around Doyle. The intent of Doyle is to say, look, we're in a different era here. Well, respectfully, your honor, I think Doyle doesn't bring up or mention jurors at all. And so I think that Doyle can't be read to have overturned Gordon. If you believe it's in conflict, I suppose that's something the full court would have to address. But since Doyle did not address situations of cure, I think that Gordon remains binding precedent in this circuit. And in that case, it holds that the post-announcement cure is effective. We believe, your honor, unless you have anything further to ask, that Gordon should be followed and that Mr. George's judgment and sentence should be affirmed. Thank you. In rebuttal, you say five. Yes, ma'am. Unless the panel has any questions for me, I will waive my rebuttal. Thank you. Thank you. Let's see if Mr. Wilansky, are you now here? He's still not here. All right. So we'll go to the third case of the morning. Let's see if they're here. Mr. Vastine? Ms. Greer? Thank you, Ms. Greer. Let's try the fourth case. Mr. O'Connor? The fourth case may not like this.